UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| SOMER TIREY and HUNTER TIREY, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 1:23-CV-00038-JRG-SKL |
| PARKRIDGE MEDICAL CENTER, INC., | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

In this civil action, Plaintiffs Somer and Hunter Tirey allege that Defendant Parkridge Medical Center, Inc. ("Defendant" or "Parkridge") discriminated against them on the basis of their disability in violation of Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794 and Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116.[1] Before the Court is Defendant's Motion for Summary Judgment [Doc. 33]. Plaintiffs responded [Doc. 39] and Defendant replied [Doc. 40]. For the reasons discussed below, Defendant's summary judgment motion will be **GRANTED**.

### I. FACTS

Somer Tirey and her husband Hunter are deaf individuals who communicate primarily through American Sign Language ("ASL"). [Doc. 38-1 ¶ 4; Doc. 38-2 ¶ 5]. They live in Hamilton County, Tennessee, where Defendant is located. [Doc. 38-1 ¶ 4; Doc. 38-2 ¶ 5]. In December 2021, prior to the incidents at issue in this case, Ms. Tirey gave birth to her first child at Parkridge East.[2]

---

[1] In the Complaint, Plaintiffs also make a passing reference to Title III of the Americans with Disabilities Act ("ADA") as a ground for relief. [Doc. 1 ¶ 5]. The ADA shares the same legal framework with the RA and ACA. *Tokmenko v. Metrohealth Sys.*, 488 F. Supp. 3d 571, 577 (N.D. Ohio 2020) (citation omitted). Thus, to the extent Plaintiffs seek relief under the ADA, their claims are subject to the same analysis as their claims under the RA and ACA, discussed above.

[2] Parkridge East and Parkridge Medical Center are both part of the Parkridge Health System.

[Doc. 41 at 5]. She was hospitalized for two days during which time she was provided a personal in-person interpreter. [*Id.* at 5].

On February 11, 2022, Ms. Tirey sought medical treatment at Parkridge Medical Center where she underwent gallbladder surgery. [Doc. 35-2 at 47]. She was discharged on the afternoon of February 14, 2022. [Doc. 35-1 at 17]. However, several hours later, she began to experience acute pain and was readmitted to the hospital. [Doc. 35-20 at 9]. Ms. Tirey then underwent a second surgery, this time for pancreatitis, and was discharged February 17, 2022. [Doc. 35-1 at 32, 48]. Mr. Tirey accompanied Ms. Tirey during both of these hospital stays. [*See, e.g.* Doc. 35-2 at 7, 25, 33, 40].

During the week that Ms. Tirey spent at Parkridge, the Tireys repeatedly requested an in-person interpreter, in particular for those times when Ms. Tirey met with the surgeon.[3] [Doc. 35-21 at 3–4]. No in-person interpreter was provided when she was hospitalized for her gallbladder surgery. [Doc. 35-1 at 17]. When she was readmitted, interpreters were present in the emergency room. [Doc. 35-20 at 8]. An interpreter was present before the Tireys met with the surgeon on February 15, 2022, and before discharge on February 17, 2022. [Doc. 35-1 at 43; Doc. 35-21 at 4]. But each time the interpreter had another appointment and left before the surgeon arrived. [Doc. 35-1 at 43; Doc. 35-20 at 5; Doc. 35-21 at 4]. No in-person interpreter was provided during any of the times the Tireys met with the surgeon. [Doc. 35-20 at 9].

In lieu of an in-person interpreter, doctors and hospital staff communicated with Plaintiffs through a combination of written notes, Video Remote Interpreting ("VRI"), and Mr. Tirey acting as interpreter. [Doc. 35-1 at 32, 36]. The VRI was slow, often froze, and was difficult for Ms. Tirey

---

[3] When Ms. Tirey was first admitted to Parkridge on February 11, 2022, she completed a Notice of Language Assistance Services form, identifying ASL as her primary language. [Doc. 35-3]. She listed "notepad" and "VRI" as acceptable alternative forms of communication. [*Id.*].

2

to see because the screens used were too small or placed too far away. [Doc. 35-2 at 21; Doc. 35-21 at 5–6]. Mr. Tirey had to use sign language to relay to Ms. Tirey what the VRI interpreter was saying, leaving him unable to participate in the conversation. [Doc. 35-21 at 6]. Plaintiffs experienced stress and frustration due to these problems with communication. [Doc. 35-20 at 10; Doc. 35-21 at 9].

After these events, Ms. Tirey became very hesitant to return to Parkridge. [Doc. 39-1 at 3]. However, she would like to have another baby and her obstetrician only practices at Parkridge. [*Id.* at 4]. It is especially important to Ms. Tirey that she receive prenatal care from her obstetrician, who specializes in high risk pregnancies, because her pregnancy would be high risk due to her age. [*Id.* at 3]. But for her concerns that she will not be provided an interpreter, she would return to Parkridge. [*Id.* at 4]. Mr. Tirey—whose regular doctors practice at Erlanger Hospital—does not want to return to Parkridge for any reason, due to the fear and anxiety he experienced during his wife's hospitalization. [Doc. 41 at 23, 25]. However, like Ms. Tirey, he wants to have another child. [Doc. 35 at 11, 15].

In February 2023, Plaintiffs initiated this lawsuit, alleging that Defendant discriminated against them by failing to ensure effective communication. [*See, e.g.* Doc. 1 ¶ 60]. Plaintiffs seek injunctive and declaratory relief and compensatory damages for emotional distress. [Doc. 1 at 15–17; Doc. 38 ¶¶ 15–16]. Defendant filed a motion for summary judgment, arguing that Plaintiffs cannot establish liability or entitlement to the relief they seek.[4] [Doc. 35 at 9]. This matter is ripe for review.

## II. LEGAL STANDARD

---

[4] Defendant also argues that certain facts in declarations submitted by Mr. and Ms. Tirey contradict their deposition testimony and should be stricken. [Doc. 40 at 2]. However, none of the facts objected to are integral to the Court's analysis. Consequently, the Court will not address Defendant's arguments on that subject.

3

Summary judgment is proper when the moving party shows, or "point[s] out to the district court," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), that the record—the admissions, affidavits, answers to interrogatories, declarations, depositions, or other materials—is without a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a), (c). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex,* 477 U.S. at 322. Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). When ruling on a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party whenever there is a genuine dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 374 (2007).

## III.    DISCUSSION

Plaintiffs bring claims under Section 504 of the Rehabilitation Act and Section 1557 of the Patient Protection and Affordable Care Act. The RA makes it unlawful for a program receiving federal assistance to discriminate against an individual on the basis of his or her disability. 29 U.S.C. § 794. The ACA also prohibits disability discrimination but does so in the specific context of federally-funded healthcare providers. 42 U.S.C. § 18116. Notably, the ACA incorporates the legal framework and remedial scheme of the RA. *Id.* Both statutes mandate that a disabled individual shall not be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under" any program or activity of the covered entity. 29 U.S.C. § 794(a); 42 U.S.C. § 18116(a).

Here, Plaintiffs claim that Defendant excluded them from participation in Ms. Tirey's medical care by failing to consistently provide an in-person interpreter.[5] [Doc. 1 ¶ 4]. Defendant argues that summary judgment is appropriate on Plaintiffs' claims because they (1) lack standing for injunctive or declaratory relief, (2) cannot recover emotional distress damages under the applicable statutes, (3) fail to establish that their rights were violated, and (4) fail to show that Defendant acted with deliberate indifference, as required for an award of compensatory damages. [Doc. 35 at 9, 13, 15, 20]. The Court agrees that Plaintiffs lack standing for injunctive relief and that emotional distress damages are not recoverable. Given that those issues are dispositive, the Court will not address Defendant's additional arguments.

### A. Standing for Equitable Relief

Article III standing is a threshold question that the Court must address before proceeding to the merits of a case. *Davis v. Detroit Pub. Sch. Cmty. Dist.*, 835 F. App'x 18, 22–23 (6th Cir. 2020). To demonstrate standing a plaintiff must establish (1) "an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). At the summary judgment stage, "the plaintiff cannot rely on mere allegations, like at the pleading stage, but must set forth by affidavit or other evidence specific facts demonstrating standing's three elements." *Rice v. Vill. of Johnstown*, 30

---

[5] An entity covered under the RA and/or ACA must provide appropriate auxiliary aids and services where necessary to ensure effective communication with disabled individuals. 45 C.F.R. §§ 84.52(d)(1), 92.102(b). Auxiliary aids include, among other things, "[i]nterpreters on-site or through video remote interpreting (VRI) services," "note takers," "written materials," "exchange of written notes," and "other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." 45 C.F.R. § 92.102(b)(1)(i). "The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." *Miller v. Christ Hosp.*, No. 1:16-cv-937, 2019 U.S. Dist. LEXIS 199034, at *11-12 (S.D. Ohio Nov. 18, 2019) (citation omitted).

F.4th 584, 591 (6th Cir. 2022) (citing *Lujan,* 504 U.S. at 561) (cleaned up). Standing must be established for each claim and each type of relief sought. *Patterson v. United Healthcare Ins. Co.*, 76 F.4th 487, 493 (6th Cir. 2023).

Defendant contends that Plaintiffs lack standing for an injunction because they cannot show a likelihood of future harm. [Doc. 35 at 13–15]. To satisfy the injury-in-fact requirement for standing, a plaintiff seeking injunctive relief must show a real and immediate likelihood of future harm. *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). While a past injury is evidence bearing on whether there is a real and immediate threat of injury in the future, "past exposure to illegal conduct does not in itself show a case or controversy" sufficient to support an injunction. *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). To establish a threat of future injury in this case, Plaintiffs must show (1) that there is a real and immediate likelihood that they will return to Parkridge (or would return but for the alleged barriers to access) and (2) that they would likely experience a denial of benefits or discrimination upon their return. *See Sunderland v. Bethesda Hosp., Inc.,* 686 F. App'x 807, 818–19 (11th Cir. 2017).

Although Ms. Tirey is reluctant to return to Parkridge, she has offered a specific reason she would return. She wants to have another baby and her preferred obstetrician only practices at Defendant's facility. Ms. Tirey already gave birth to one child at Parkridge East. Returning to Parkridge would not be physically difficult, since the Tireys live in the same county as Defendant. And Ms. Tirey attests that but for the alleged barriers to access she would use Defendant's services again. Mr. Tirey has not expressed a similar willingness to return to Parkridge. And his doctors practice at a different hospital. Nevertheless, like his wife, Mr. Tirey wants another child. And it is reasonable to infer that if Ms. Tirey receives prenatal care at Parkridge, Mr. Tirey will accompany her, as he did during the incidents at issue here. Viewing the evidence in the light most

6

favorable to Plaintiffs, there is a sufficient likelihood that they would return to Parkridge in the future.[6]

However, Plaintiffs have not shown that they are likely to experience a denial of benefits or discrimination upon their return. There is no evidence that Defendant has engaged in a pattern of failing to accommodate hearing-impaired individuals or that Defendant has implemented a discriminatory policy. The harm that the Tireys allegedly suffered in the past is not itself sufficient to establish a likelihood of future injury. *O'Shea*, 414 U.S. at 495–96. Further, the only foreseeable reason that Plaintiffs will return to Defendant is if Ms. Tirey has another child. And when she gave birth at Parkridge East previously, Ms. Tirey was provided with a personal on-site interpreter. Absent additional facts, the possibility that Defendant will deny Plaintiffs access to effective communication in the future is merely speculative.

Plaintiffs contend that in order to demonstrate a likelihood of future injury, they need only show a plausible intent to return to Parkridge. In support of that argument, they cite *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 580 (6th Cir. 2014), where the Sixth Circuit Court of Appeals held that an ADA plaintiff "demonstrates the requisite threat of future injury where he establishes (1) a plausible intent to return to the noncompliant accommodation or (2) that he would return, but is deterred from visiting the noncompliant accommodation because of the alleged accessibility barriers." *Id.* The Court notes that this is a pleading standard, not a standard for summary judgment. More importantly, the Sixth Circuit has only used this formulation of the future harm requirement in disability discrimination cases involving architectural or structural

---

[6] The Court notes that in early 2024, Mr. Tirey was taken in an ambulance to Parkridge during an unspecified medical event. [Doc. 35-21 at 12; Doc. 41 at 23–25]. Mr. Tirey asked for an interpreter but was not provided one. It is unclear how long Mr. Tirey was at the hospital or what, if any, alternative methods of communication Defendant employed. In any event, this incident is not part of the Court's standing analysis because it occurred *after* Plaintiffs filed the Complaint. *See Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992)) (explaining that the evidence relevant to the standing inquiry consists of "the facts as they existed at the time the plaintiff filed the complaint.").

barriers. *See Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 757–58 (6th Cir. 2019) (wheelchair accessibility of bathrooms); *Gaylor*, 582 F. App'x at 580–81 (accessibility of parking spaces). In such cases, it is understood that the barrier to access will still be there upon the plaintiff's return. When, as here, the alleged barrier to access involves discrimination in the delivery of services, future injury is not certain and must be established by the plaintiff. *See Tomei v. Parkwest Med. Ctr.*, No. 3:19-CV-00041-DCLC-JEM, 2022 U.S. Dist. LEXIS 40756, at *9 (E.D. Tenn. Mar. 8, 2022) (finding that the *Gaylor* standard did not apply where plaintiff sought injunctive relief under the ACA based on the defendant's failure to secure in-person ASL interpreter).

Having failed to show a likelihood of future injury, Plaintiffs lack standing to pursue an injunction. The standing requirements for an injunction are the same as those required for declaratory relief. *Kanuszewski v. Mich. HHS*, 927 F.3d 396, 406 (6th Cir. 2019) (citation omitted). Hence, Plaintiffs also lack standing for a declaratory judgment. Defendant is entitled to summary judgment on Plaintiffs' claims for equitable relief.

### B. Emotional Distress Damages

Defendant contends that Plaintiffs' claims for compensatory damages must be dismissed pursuant to *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022). [Doc. 35 at 20]. In *Cummings*, the Supreme Court held that emotional distress damages are not available to a plaintiff pursuing an anti-discrimination suit under the RA and the ACA. *Id.* Plaintiffs acknowledge that the only compensatory damages they seek concern emotional distress. [Doc. 38 ¶¶ 15–16]. And in light of the *Cummings* decision, Plaintiffs' claims for emotional distress damages fail as a matter of law. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' claims for compensatory damages. *See*, *e.g. Sparks v. Henry Ford Health Sys.*, No.

8

21-11430, 2024 U.S. Dist. LEXIS 50491, at *17-18 (E.D. Mich. Mar. 21, 2024) (dismissing plaintiff's ACA claims for emotional distress damages under *Cummings*); *Getman v. Or. Health & Sci. Univ.*, No. 3:21-cv-01408-SB, 2022 U.S. Dist. LEXIS 211370, at *13–14 (D. Or. Nov. 22, 2022) (granting summary judgment on plaintiff's compensatory damages claims under the RA and ACA since plaintiff sought only emotional damages).

### IV. CONCLUSION

Because Plaintiffs have not established entitlement to the relief they seek, Defendant's Motion for Summary Judgment is **GRANTED** and this case will be **DISMISSED with PREJUDICE**.

An appropriate order will enter.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE